IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES PARKINSON and LEIGH ANN PARKINSON, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:17-cv-00185-GNS |
| v. | ) ) ) | JURY DEMAND |
| GILBERT, BARBEE, MOORE & MCILVOY, P.S.C. d/b/a GRAVES-GILBERT CLINIC; HOPE H. HAVENER, M.D.; ASHLEY ALLEN, APRN; and NATALIE LYNN BRYANT, APRN | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Come now the Plaintiffs, Michael James Parkinson and his wife, Leigh Ann Parkinson, and for their complaint for damages against the Defendants, Gilbert, Barbee, Moore & McIlvoy d/b/a Graves-Gilbert Clinic, Hope Havener, M.D., Ashley Allen, APRN, and Natalie Bryant, APRN, state as follows:

## JURISDICTION AND VENUE

1. The Plaintiffs are husband and wife and are citizens and residents of Nashville, Davidson County, Tennessee. They are domiciled in Tennessee.

2. The Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. is a Kentucky

Professional Services Corporation having a principal place of business in Bowling Green, Warren County, Kentucky. It is domiciled in Kentucky. Its registered agent for service of process is Steven K. Sinclair, 201 Park St., Bowling Green, Kentucky 42102.

     3.     The Defendant Hope H. Havener, M.D. is a citizen and resident of Bowling Green, Warren County, Kentucky. Dr. Havener is domiciled in Kentucky.

     4.     The Defendant Ashley Allen, APRN is a citizen and resident of Bowling Green, Warren County, Kentucky. Ashley Allen is domiciled in Kentucky.

     5.     The Defendant Natalie Lynn Bryant, APRN is a citizen and resident of Bowling Green, Warren County, Kentucky. Natalie Lynn Bryant is domiciled in Kentucky.

     6.     Venue in this action lies in the Western District of Kentucky, by virtue of 28 U.S.C. §1391(b)(2) because all of the events or omissions giving rise to the causes of action in this Complaint occurred in Bowling Green, Warren County, Kentucky.

     7.     The United States District Court for the Western District of Kentucky has subject matter jurisdiction over this matter by virtue of 28 U.S.C. §1332(a)(1) because diversity of citizenship exists between the Plaintiffs and the Defendants and the amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of costs and interest.

## FACTS

     8.     This case arises from each of the Defendants' failure to provide proper care, monitoring, treatment, and referral of Michael James Parkinson.

9. The Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. provides health care services to the public under the assumed name of Graves-Gilbert Clinic (the "Clinic"). The Clinic operates at 201 Park St., Bowling Green, Kentucky 42101.

10. The Defendant Hope H. Havener, M.D. is a physician licensed in the Commonwealth of Kentucky, and is engaged in the practice of medicine in Bowling Green, Warren County, Kentucky. At the time of the matters complained of herein, Defendant Hope H. Havener, M.D. was a principal, shareholder, agent, and/or employee of Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. Whenever Defendant Hope H. Havener, M.D. provided any medical care to Plaintiff Michael James Parkinson, she was doing so within the course and scope of her employment or agency for and/or on behalf of Gilbert, Barbee, Moore & McIlvoy, P.S.C.

11. The Defendant Ashley Allen, APRN is a registered nurse licensed in the Commonwealth of Kentucky, and is engaged in the practice of nursing in Bowling Green, Warren County, Kentucky. At the time of the matters complained of herein, Defendant Ashley Allen, APRN was an agent, and/or employee of Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. Whenever Defendant Ashley Allen, APRN provided any medical care to Plaintiff Michael James Parkinson, she was doing so within the course and scope of her employment or agency for and/or on behalf of Gilbert, Barbee, Moore & McIlvoy, P.S.C.

12. The Defendant Natalie Lynne Bryant, APRN is a registered nurse licensed in the Commonwealth of Kentucky, and is engaged in the practice of nursing in Bowling Green, Warren County, Kentucky. At the time of the matters complained of herein, Defendant Natalie Lynne Bryant, APRN was an agent, and/or employee of Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. Whenever Defendant Natalie Lynne Bryant, APRN provided any medical care to Plaintiff

Michael James Parkinson, she was doing so within the course and scope of her employment or agency for and/or on behalf of Gilbert, Barbee, Moore & McIlvoy, P.S.C.

13. Michael James Parkinson and his wife Leigh Ann Parkinson lived in Bowling Green, Kentucky between 2012 and 2016.

14. Michael James Parkinson's primary care provider during this period was Hope H. Havener, M.D. of the Graves-Gilbert Clinic. Dr. Havener was a principal, shareholder, employee and/or agent of Gilbert, Barbee, Moore & McIlvoy, and P.S.C., which operated the Clinic where she practiced medicine.

15. As a part of a yearly physical, providers at the Graves-Gilbert Clinic ordered lab tests of Mr. Parkinson's blood. One of the things the lab tested the blood for was levels of prostate-specific antigens ("PSA").

16. PSA levels above 4.0 ng/mL are, and were at the times complained of, considered abnormal.

17. On January 15, 2013, blood from Michael James Parkinson was drawn for analysis. Michael James Parkinson's PSA was 2.640 ng/mL according to lab results. According to records at the Clinic, these results were "verified" by Dr. Havener.

18. After his next yearly checkup on July 15, 2014, blood from Michael James Parkinson was drawn for analysis. Michael James Parkinson's PSA was 3.35 ng/mL. According to records at the Clinic, these results were "verified" by Dr. Havener.

19. After his next yearly checkup on September 11, 2015, blood from Michael James Parkinson was drawn for analysis.

20. This time, Michael James Parkinson's PSA was 5.34 ng/mL. The lab report

flagged the result with an "H," to designate that it was "high." According to records at the Clinic, these results were "verified" by Ashley Allen, APRN.

21. Although the Graves-Gilbert Clinic medical records showed that his PSA level was "high," nobody told Mr. Parkinson this and nobody did anything else about it.

22. Mr. Parkinson saw Natalie Lynn Bryant, APRN, at the clinic on August 9, 2016. Although she had his medical history and reviewed -- or should have reviewed -- his records during this visit, Natalie Lynn Bryant did not alert Mr. Parkinson that his PSA from the blood drawn on September 11, 2015 was "high."

23. Michael James Parkinson moved to Nashville, Tennessee.

24. On November 14, 2016, Michael James Parkinson went to the St. Thomas Medical Group in Nashville and had blood work performed as a part of his first appointment with his new primary care provider. His PSA was 13 ng/mL.

25. Due to his abnormal PSA result, St. Thomas Medical Group referred Michael James Parkinson to an urologist in Nashville. His PSA in December 2016 was 17.

26. On January 19, 2017, doctors took a biopsy from Michael James Parkinson's prostate. Doctors subsequently found that the biopsy sample tested positive for prostate cancer and Mr. Parkinson learned for the first time he had prostate cancer.

27. Subsequent imaging studies revealed that the cancer had metastasized to Michael James Parkinson's L1 vertebra and that several of his lymph nodes were enlarged.

28. Doctors diagnosed Mr. Parkinson with Stage IV prostate cancer. He is currently undergoing hormone therapy and has completed six cycles of chemotherapy.

29. Mr. Parkinson did not discover that he had prostate cancer until after the January

19, 2017 biopsy and, until learning the results of that biopsy, did not know that he might have a legal cause of action against the Defendants.

## **WRONGS COMPLAINED OF GILBERT, BARBEE, MOORE & MCILVOY, P.S.C.**

30. The Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. hired various employees and/or agents, actual and/or apparent, who rendered care and treatment to Michael James Parkinson while acting within the course and scope of their employment or agency.

31. The Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. is liable for any negligent medical care and treatment provided by its actual or apparent agents and/or its employees to Michael James Parkinson and is liable for their negligent acts and/or omissions.

32. Further, the Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. is vicariously liable under the laws of agency and/or *respondeat superior* for the negligent acts and omissions of its nurses and staff and personnel who provided care to Michael James Parkinson.

33. The Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C. was negligent in failing to provide reasonable care and treatment to Michael James Parkinson. Without limiting this general allegation of negligence, Gilbert, Barbee, Moore & McIlvoy, P.S.C. was negligent further on or about July 15, 2014, and continuing thereafter through November 14, 2016, in the following ways:

    a. Negligently did not inform Michael James Parkinson that he had higher-than-normal PSA levels;

    b. Negligently did not advise Michael James Parkinson to have more frequent PSA

        tests at regular intervals to monitor any changes to his PSA level;

    c.    Negligently did not refer Michael James Parkinson to a urologist;

    d.    Negligently did not properly manage its agents and/or employees;

    e.    Negligently did not provide timely diagnosis and intervention for Michael James Parkinson;

    f.    Negligently did not take appropriate measures for Michael James Parkinson so he could receive timely intervention and medical treatment; and,

    g.    Negligently failed to establish proper and safe policies and procedures to require its medical personnel to properly test male patient's PSA levels and report results of same to its patients.

34.    The negligence of Defendant Gilbert, Barbee, Moore & McIlvoy, P.S.C., directly, and by acting through its employees and/or agents, was a direct, legal and proximate cause of the injuries and damages sustained by the Plaintiffs.

## WRONGS COMPLAINED OF DEFENDANT HOPE H. HAVENER, M.D.

35.    The Defendant Hope H. Havener, M.D. was negligent on or about July 15, 2014, and continuing thereafter through November 14, 2016, in the following ways:

    a.    Negligently did not provide appropriate and reasonable medical and health care services to Michael James Parkinson;

    b.    Negligently did not observe the recognized standards of acceptable professional practice required and expected of her;

    c.    Negligently did not review pertinent parts of Michael James Parkinson's medical records or test results;

    d.    Negligently did not inform Michael James Parkinson that he had higher-than-normal PSA levels and free PSA percentages in his blood;

    e.    Negligently did not advise Michael James Parkinson to have more frequent PSA tests at regular intervals to monitor any changes to his PSA level;

    f.    Negligently did not refer Michael James Parkinson to a urologist;

    g.    Negligently did not properly manage her agents and/or employees;

    h.    Negligently did not provide timely diagnosis and intervention for Michael James Parkinson;

    i.    Negligently failed to establish proper and safe policies and procedures to require medical personnel under her supervision to properly test male patient's PSA levels and report results of same to patients;

    j.    Negligently did not take appropriate measures for Michael James Parkinson to receive timely intervention and medical treatment; and,

    k.    Negligently caused injuries and damages to Plaintiffs.

36.    The negligence of Defendant Hope H. Havener, M.D. was a direct, legal and proximate cause of the injuries and damages sustained by the Plaintiffs.

### **WRONGS COMPLAINED OF DEFENDANT ASHLEY ALLEN, APRN**

37.    The Defendant Ashley Allen, APRN was negligent on or about September 11, 2015

and continuing thereafter by not providing reasonable medical care and treatment to and/or for Michael James Parkinson. Without limiting this general allegation of negligence, Ashley Allen, APRN was further negligent on or about July 15, 2014, and continuing thereafter through November 14, 2016, in the following ways:

    a.    Negligently did not provide appropriate and reasonable medical and health care services to Michael James Parkinson;

    b.    Negligently did not observe the recognized standards of acceptable professional practice required and expected of her;

    c.    Negligently caused injuries and damages to Plaintiffs;

    d.    Negligently did not inform Michael James Parkinson that he had higher-than-normal PSA levels;

    e.    Negligently did not advise Michael James Parkinson to have frequent PSA tests at regular intervals to monitor any changes to his PSA level;

    f.    Negligently did not refer Michael James Parkinson to a urologist; and,

    g.    Negligently did not take appropriate measures for Michael James Parkinson to receive timely intervention and proper medical treatment.

38.    The negligence of Defendant Ashley Allen, APRN was a direct, legal and proximate cause of the injuries and damages sustained by the Plaintiffs.

**WRONGS COMPLAINED OF DEFENDANT NATALIE LYNNE BRYANT, APRN**

39.    The Defendant Natalie Lynne Bryant, APRN was negligent on or about August 9,

2016 and continuing thereafter by not providing reasonable medical care and treatment to and/or for Michael James Parkinson. Without limiting this general allegation of negligence, Natalie Lynne Bryant, APRN was further negligent on or about July 15, 2014, and continuing thereafter through November 14, 2016, in the following ways:

a. Negligently did not provide appropriate and reasonable medical and health care services to Michael James Parkinson;

b. Negligently did not observe the recognized standards of acceptable professional practice required and expected of her;

c. Negligently caused injuries and damages to Plaintiffs;

d. Negligently did not inform Michael James Parkinson that he had higher-than-normal PSA levels;

e. Negligently did not advise Michael James Parkinson to have more frequent PSA tests at regular intervals to monitor any changes to his PSA level;

f. Negligently did not refer Michael James Parkinson to a urologist; and,

g. Negligently did not take appropriate measures for Michael James Parkinson to receive timely intervention and proper medical treatment.

40. The negligence of Defendant Natalie Lynne Bryant, APRN was a direct, legal and proximate cause of the injuries and damages sustained by the Plaintiffs.

## **DAMAGES**

41. As a direct, legal, and proximate result of the negligence of the Defendants, Michael

James Parkinson now has Stage IV prostate cancer. He has suffered a delay in treatment and has thus required more aggressive treatment, has a much worsened prognosis, and needlessly sustained injuries and damages that otherwise would not have occurred. Plaintiff Michael James Parkinson's injuries have required medical treatment and care, and he will require continuous medical treatment for his injuries for the rest of his life. He has suffered injuries including, but not limited to, past and future physical pain and suffering, past and future mental anguish and emotional pain and suffering, past and future loss of enjoyment of life, disfigurement, permanent impairment, past and future lost wages, past and future loss of earning capacity, reduced life expectancy, and past and future medical expenses.

42. As a direct, proximate, and legal result of the negligence of the Defendants and the resulting injury to Michael James Parkinson, the Plaintiff Leigh Ann Parkinson has suffered a loss of consortium, recoverable pursuant to K.R.S. 411.145, as a result of the loss of services, assistance, aid, society, companionship, and conjugal relationship between a wife and a husband.

## CONSITUTIONAL RIGHT TO RELIEF FROM THE COURT

43. K.R.S. 216C *et seq.* requires that before filing a malpractice and/or malpractice-related claim in any court in Kentucky, the Plaintiffs must first file a proposed medical malpractice complaint with the Commonwealth's Medical Review Panel ("MRP"). On October 30, 2017, the Franklin County Circuit Court of Kentucky found and ruled the statute unconstitutional and permanently enjoined its enforcement. Thus, the MRP stopped accepting claims. The Governor of the Commonwealth of Kentucky moved for a stay of the Franklin County Circuit Court's

permanent injunction and, on November 9, 2017, the Kentucky Court of Appeals granted the stay of the injunction. The stay was granted partly because the Franklin County Circuit Court's Order did not address the expiration of the statute of limitations of claims of those plaintiffs who complied with the MRP Act. According to its website, the MRP is again accepting claims.

44. Plaintiffs need to file a proper complaint in a court of competent jurisdiction to ensure that their rights do not lapse under any applicable statute of limitations or statute of repose. Therefore, the Plaintiffs are filing a claim with the MRP, but also filing this action seeking relief from this Court.

45. The Plaintiffs additionally assert that K.R.S. 216C *et seq.* violates the Equal Protection and Special Legislation Guarantees under Sections 1, 2, 3, 59, and 60 of the Kentucky Constitution, the separation of powers doctrine contained within Sections 27, 28, 109, and 116 of the Kentucky Constitution, and the jural rights and open courts doctrines under Sections 7, 14, 54, and 241 of the Kentucky Constitution. Therefore, notwithstanding whatever state court action is taken concerning the MRP procedure, the Plaintiffs assert that they have a constitutional right to seek redress in this Court. The Plaintiffs move the Court to declare K.R.S. 216C unconstitutional under the Kentucky Constitution and to proceed on the merits of the Plaintiffs' case.

**PRAYER FOR RELIEF**

46. WHEREFORE, the Plaintiffs respectfully demand a judgment against the Defendants in the sum of FORTY MILLION DOLLARS AND NO/100 CENTS ($40,000,000.00) in favor of Michael James Parkinson and a judgment against the Defendants in the sum of TEN

MILLION DOLLARS AND NO/100 CENTS ($10,000,000.00) in favor of Leigh Ann Parkinson, which are in excess of the minimum necessary to establish the jurisdiction of this Court.

47. WHEREFORE, the Plaintiffs respectfully demand an award against the Defendants for the discretionary costs associated with this action.

48. WHEREFORE, the Plaintiffs respectfully demand an award against the Defendants for any pre and/or post judgment interest to which they may be entitled.

49. WHEREFORE, to the extent it becomes necessary in this litigation, the Plaintiffs respectfully request that the Court declare K.R.S. 216C *et seq.* unconstitutional under the Kentucky Constitution.

Respectfully submitted,

KINNARD, CLAYTON & BEVERIDGE

/s/Randall L. Kinnard
By: Randall L. Kinnard    KY Bar No. 86290
(Admission to Western District pending and *Pro Hac Vice* admission pending)
The Woodlawn
127 Woodmont Boulevard
Nashville, Tennessee 37205
Ph: (615) 297-1007
rkinnard@kcbattys.com

and

LOWDER & MCGILL PLLC

/s/ Matt McGill
By: Matt McGill    KY Bar No. 91073
537 E. 10th St., Suite 200
P.O. Box 900
Bowling Green, KY 42102-0900
Ph: (270) 842-3924
Fax: (270) 282-2085
matt@lowdermcgill.com

ATTORNEYS FOR PLAINTIFFS